In re CONSOLIDATED COMPANIES, INC., Debtor.

SUN INSURANCE COMPANY
OF NEW YORK

v.

CONSOLIDATED COMPANIES,
INC., et al.

Civ. A. No. 95–1544.

United States District Court,
E.D. Louisiana.

Aug. 2, 1995.

Eugene R. Preaus, Preaus, Roddy & Krebs, New Orleans, LA, for Sunrise Inv. Co.

Joseph Ernest Friend, Breazeale, Sachse & Wilson, New Orleans, LA, for General Elec. Capital Corp.

Earl S. Eichin, Jr., O'Neil, Eichin, Miller, Breckenridge & Saporito, New Orleans, LA, for Sun Ins. Co. of New York.

Alan Harry Goodman, Lemle & Kelleher, Edward M. Heller, Robyn Jeana Spalter, Bronfin & Heller, New Orleans, LA, Philip C. Olsson, Olsson, Frank & Weeda, Washington, DC, for Consolidated Companies, Inc.

## ORDER AND REASONS

McNAMARA, District Judge.

Before the court is the appeal of Sunrise Investment Company, Inc., ("Sunrise"), from the judgment issued by the United States Bankruptcy Court in Bankruptcy No. 91–10422, Adversarial Proceeding No. 92–1237. Appellee, Sun Insurance Company of New York, ("Sun"), filed a response brief. This matter is before the court on briefs, without oral argument. Having considered the briefs of counsel, the record below and the applicable law, the court finds that the Bankruptcy Court's Order should be affirmed.

## I. BACKGROUND

Sun issued an all risk commercial property insurance policy to Consolidated Companies, Inc. for the period of July 1, 1988 through 1991. Among the insured locations was an unoccupied warehouse which was damaged by acts of vandalism and theft of wiring and mechanical components sometime prior to April 12, 1991. The loss was adjusted at $177,932.50. Because a dispute arose among Sunrise and two other parties as to which of them was entitled to receive the insurance proceeds, Sun instituted an interpleader action and deposited the $177,932.50 into the registry of the court.[1]

Sunrise and the other defendants brought counterclaims against Sun claiming that Sun should be required to pay an additional $141,045.50 under the insurance policy, which represents the deductions that were made for depreciation of the destroyed property. The bankruptcy court held that pursuant to the language of the Sun policy, the counterclaimants were entitled to the actual cash value of the property destroyed, and were not entitled to receive any amounts deducted for depreciation. Sunrise's appeal of this decision is currently before the court.[2]

Sunrise asserts that the bankruptcy court erred in finding that it was entitled to the actual cash value rather than the undepreciated value of the damaged property because 1) the Sun policy was ambiguous in its provisions as to partial losses, and such ambiguity should have been construed against the insurer; and alternatively 2) regardless of the provisions of the Sun policy, the Louisiana Standard Fire Policy Statutes in effect when the policy was issued, which provides for replacement value on partial losses, must be read into the Sun policy. See La.Rev.Stat. Ann. 22:695. In addition, Sunrise seeks attorneys' fees and penalties.

Sun argues (1) that its policy clearly and unambiguously provides for payment of the actual cash value on partial losses, (2) that the Louisiana Standard Fire Policy provisions should not be read into the Sun policy because the loss was not the result of fire, and (3) that if the court were to apply the Standard Fire Policy statutes, that it would also have to apply the prescriptive period set forth in those statutes, and that accordingly Sunrise's counterclaim has prescribed. See La.Rev.Stat.Ann. 22:691(F)(1).

---

1. The issue of the competing parties' entitlement to the uncontested portion of the insurance proceeds was decided by this court, and is set forth in this court's minute entry of July 14, 1993, Doc. No. 9 of Civil Action 93–1244.

2. As a result of this court's appellate decision as to which parties were entitled to the proceeds on the underlying claim, and as a result of agreements reached among the parties, Sunrise is the sole party remaining before the court seeking an additional $141,045.50 under the Sun policy. (See this court's minute entry of July 5, 1995, Doc. No. 9).

## II. LEGAL ANALYSIS

### A. Standard of Review

When reviewing a decision of a bankruptcy court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal. *Matter of Webb*, 954 F.2d 1102 (5th Cir.1992). Findings of fact are reviewed under the clearly erroneous standard, and conclusions of law are subject to plenary review. *Matter of Delta Towers, Ltd.*, 924 F.2d 74, 76 (5th Cir.1991). Because the interpretation of an insurance contract and application of statutes are both questions of law, the court will review the bankruptcy court's findings *de novo*. *See Rutgers State University v. Martin Woodlands Gas Co.*, 974 F.2d 659 (5th Cir.1992).

### B. The Court is Not Required to Read the Standard Fire Policy Provisions Into the Theft and Vandalism Coverage of the Sun Policy

Because a finding that the Louisiana Standard Fire Policy provisions are applicable to the loss at issue would render moot the issue of what the Sun policy actually provides with respect to partial losses, the court will address that issue first. After a review of the memoranda, the Sun policy, and the applicable law, the court finds that provisions in Louisiana Revised Statute 22:695 should not be read into the Sun policy for the reasons set forth below.

Revised Statute 22:695 is contained in Part XV of the Louisiana Insurance Code, which is entitled "Standard Fire Policy." Revised Statute 22:691 is the first statute in that section, and it sets forth the general concepts and provisions. The second paragraph of Section E of 22:691 provides in pertinent part as follows:

> Any policy or contract ... which includes either on an unspecified basis as to the coverage or for a single premium, coverage against the peril of fire and substantial coverage against other perils need not comply with the provisions of Subsections A and B hereof, provided (1) such policy or contract shall afford coverage, with respect to the peril of fire, not less than the coverage afforded by said fire policy, (2) the provisions in relation to mortgagee interests and obligations in said standard fire policy may be incorporated therein without change, (3) such policy or contract is complete as to all of its terms without reference to the standard form of fire insurance policy or any other policy, and (4) the commissioner is satisfied that such policy or contract complies with the provisions hereof.

La.Rev.Stat. 22:691(E), par. 2.

In determining whether the four prongs of the test set forth above are satisfied by the Sun policy, the fire statutes provide that "[i]n the event that the policy forms used are not equivalent to or do not exceed the terms of the standard fire policy, all of the provisions of the standard fire policy shall become a part of the policy by physically attaching the standard fire policy thereto." La.Rev.Stat. 22:691.2(B). Furthermore, failure to physically attach the standard fire policy "shall not affect the rights of the insured under the standard fire policy and the provisions of the standard fire policy shall become a part of the contract and shall prevail." La.Rev.Stat. 22:691.2(C).

The effect of the provisions of 22:691.2 is to require the court to read the standard fire policy provisions into the fire coverage of any type of policy. By reading the standard fire provisions into the fire coverage in a policy which covers multiple perils on an unspecified basis, the court finds that the four prongs set forth in R.S. 22:691(E) paragraph 2 are necessarily satisfied.

The Sun policy at issue is a commercial property policy which "insures against all risks of direct physical loss or damage to all property" described in the policy. Because this policy provides coverage against "the peril of fire and substantial coverage against other perils" and because the premium for such coverage is a single premium on an unspecified basis as to each particular type of coverage, the court finds that paragraph two of Louisiana Revised Statute 22:691(E) applies. Further, as set forth above, to the extent the fire coverage of the Sun policy is deficient with respect to that provided in the standard fire policy, Revised Statute

22:691.2(C) directs the court to read the standard fire provisions into the Sun policy's fire coverage.

Having determined that the four prongs of R.S. 22:691(E), paragraph 2 are satisfied by the Sun policy, the court finds that Sections A and B of R.S. 22:691, which mandate a particular form with standard provisions, conditions, etc., and would also trigger the application of R.S. 22:695 for valuation purposes, need not be complied with, with respect to the non-fire perils covered by the policy. In other words, the court finds that the valuation provisions of R.S. 22:695 should not be read into the Sun policy coverage for theft and vandalism, which are triggered by the loss suffered in this case.[3]

Consequently, the provisions of the Sun policy on valuation are controlling in determining whether Sunrise is entitled to actual cash value or replacement value for its partial losses.

## C. The Sun Policy Provides for Actual Cash Value on Partial Losses

An insurance policy is a contract and the rules established for the construction of written instruments apply. *Lindsey v. Poole,* 579 So.2d 1145 (La.App.2d Cir.1991). If the language in the policy is clear, it must be enforced as written. *Central Louisiana Electric Co., Inc. v. Westinghouse Electric Corp.,* 579 So.2d 981 (La.1991). Furthermore, an insurance policy should not be given an interpretation that would enlarge or restrict its terms beyond what is reasonably contemplated or which would lead to an absurd conclusion. *Jim Carey Distributing Co., Inc. v. Zinna,* 589 So.2d 526 (La.App. 1st Cir.1991).

Applying these rules of construction to the Sun policy at issue, the court finds that the policy clearly provides for actual cash value on partial losses.

The Sun policy provides the following with respect to valuation:

### A. *PROPERTY:*

In case of loss the basis of adjustment, unless otherwise endorsed herein, shall be as follows:

1) Real Property and improvements and betterments at replacement cost. Actual Cash Value on items so noted in values filed with company.

2) Machinery and Equipment, at replacement cost if actually replaced; otherwise at Actual Cash Value; ...

5) Other property, not otherwise provided for, at actual cash value.

*See* Sun policy, section 9.

The insured property at issue was a vacant warehouse building which the insured had valued at an actual cash value of $650,000.00 on the Schedule IIB attached to the policy. In this case, the damage to the warehouse was partial, and not a total loss. The court finds that the policy provides that the insured is entitled to actual cash value for the partial loss to the warehouse for the following reasons.

First, because the insured had filed a $650,000 value to the warehouse itself, paragraph 9(A)(1) provides that the loss is adjusted on an actual cash value basis. The fact that the warehouse suffered only a partial loss, or loss only to improvements, does not alter that result under the wording of the policy.

Second, to the extent that the loss was not to the warehouse and improvements thereon, it consisted of damage to machinery and equipment, which under the plain wording of paragraph 9(A)(2) is adjusted on an actual cash value basis if it is not actually replaced. The parties have entered into a stipulation to the effect that any machinery or equipment which formed the basis of the insured's claim was not repurchased or otherwise replaced (*See* Bankruptcy Record, Joint Stipulation of Material Facts, Stipulation No. 25); therefore, the actual cash value basis, and not

---

**3.** The result reached by the court is in accord with the Fifth Circuit's decision in *Graham v. Milky Way Barge, Inc.,* 824 F.2d 376, 381–82 (5th Cir.1987), which held that Louisiana Revised Statute 22:692, another portion of the Standard Fire Policy Provision addressing breach of warranties and conditions of fire policies, applies to fire policies only. The court held that R.S. 22:695 should not be applied "to any other than fire losses covered by a policy for insurance covering losses due to fire." *Id.* at 382.

replacement cost, is used in adjusting the loss of machinery and equipment.

Third, even if the court were to accept Sunrise's argument that the policy makes no explicit provision for partial losses, that would trigger application of the catch-all category set forth in paragraph 9(A)(5) of the valuation section of the Sun policy. That section, set forth above, designates the actual cash value basis for adjustment of loss of all other property not otherwise provided for.

In summary, the court finds that the Sun policy clearly provides that the losses suffered by the insured are to be adjusted on an actual cash value basis.[4] The bankruptcy court did not err in ruling that Sunrise is not entitled to the $141,045.50 which represents the difference between the actual cash value and the replacement cost.

In light of the court's ruling, Sunrise's claim for statutory penalties and attorney's fees is moot.

### III. CONCLUSION

For the reasons set forth above, the court **AFFIRMS** the Judgment of the bankruptcy court, finding that Sunrise Investment company is entitled only to the actual cash value and not the replacement cost of the insured's loss. The Appeal of Sunrise Investment Company is accordingly **DISMISSED.**

4. Because of the conclusion reached by the court on the merits of the valuation issue, which serves as the basis of Sunrise's counterclaim, it is not necessary for the court to decide whether or not the claim had prescribed under the Louisiana standard fire provisions. The court notes that Louisiana courts have applied the prescription provisions of the standard fire policy to non-fire losses where the policy does not set forth a specific prescriptive period for those losses. *See Grice v. Aetna Casualty and Surety Company,* 359 So.2d 1288 (La.1978).