**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-30889
(Summary Calendar)

_____

IN THE MATTER OF:
CONSOLIDATED COMPANIES, INC.

                                                            Debtor,

_____

SUNRISE INVESTMENT COMPANY,

                                                    Appellant,

versus

SUN INSURANCE COMPANY OF NEW YORK, and
GULF LIFE INSURANCE COMPANY

                                                    Appellees.

_____

Appeal from United States District Court
for the Eastern District of Louisiana
(95-CV-1544 D)

_____

October 11, 1996

Before JOLLY, JONES  and STEWART, Circuit Judges.

PER CURIAM:[*]

Sunrise Investment Company appeals the district court's order interpreting Louisiana

insurance law as requiring all risk commercial property insurance policies to comply with the

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

requirements of section 22:691 of the Louisiana Revised Statutes for fire perils only, rather than all perils, interpreting the Louisiana Valued Policy Law in a manner that required Sunrise's losses to be adjusted based on replacement cost rather than actual cash value, and failing to award Sunrise statutory penalties and attorney fees.  In our original opinion of March 26, 1996, we affirmed.  In its petition for rehearing, appellant Sunrise Investment Company correctly noted our incorrect reference to La. Rev. Stat. § 22:695 as amended and to our failure to consider *Real Asset Management, Inc. v. Lloyds of London*, 61 F.3d 1223 (5th Cir. 1995) in our analysis.  After carefully considering the points raised on rehearing, this court's original opinion is withdrawn.  For the following reasons, we affirm the district court's decisions.

**FACTS**

Sun Insurance Company issued an all risk commercial property insurance policy to Consolidated Companies, Inc. ("Conco") for the period of July 1, 1988 through 1991.  Sunrise Investment Company (who sold the property to Conco) and Gulf Life (another mortgagee of the property) were additional assureds under the policy.  GECC was the loss payee pursuant to the Lender's Loss Payable Clause.  The policy issued was not a standard form policy; instead, it was prepared in manuscript form by the insurer.  The policy provided coverage, inter alia, against all risks, including fire, of a direct physical loss or damage to the insured property.

Sometime prior to April 12, 1991, an unoccupied warehouse on Jefferson Highway in Baton Rouge, Louisiana, which was one of the insured properties, was damaged by acts of vandalism and theft of wiring and mechanical components.  On April 12, 1991, Conco notified its insurance broker of the damage and loss, and the broker gave notice to Sun.  The insurance adjuster, hired by Sun to

2

investigate the damage, issued several reports which concluded that the policy covered the loss; however, he calculated a $25,000 deductible per occurrence.

Sun considered the vandalism and the theft two separate occurrences causing damage to the warehouse. The vandalism loss totaled $66,967.50, and the theft loss totaled $110,965.50. The figures reflected a deduction for depreciation and the deductible. The district court presented the following explanation of how the adjuster arrived at the two totals:

> The vandalism figure is a net actual cash value claim amount and was arrived at by using a replacement cost loss exposure of $135,667.00 and deducting $43,700.00 in depreciation and the deductible. The theft figure also represents a net actual cash value loss and was arrived at by using total replacement cost repairs of $233,310.00 and deducting a betterment figure of $97,345.00 and a $25,000.00 deductible.

Conco filed for bankruptcy on February 6, 1991 in the Eastern District of Louisiana. Accordingly, drafts in the amounts described above were issued to Conco and GECC. However, when Sunrise, GECC, and Gulf Life all claimed that they were entitled to the money and claimed that the adjustment was improper, Sun filed an interpleader complaint as an adversary proceeding in the Conco bankruptcy action and deposited the undisputed amount, $177,932.50, into the court's registry.[1] Sunrise, GECC, and Gulf Life filed counterclaims contesting the depreciation deduction and requesting penalties and attorneys' fees. The district court reversed the bankruptcy court's judgment rendered in favor of Sunrise and Gulf Life, and directed entry of the judgment in favor of GECC for the full amount of the interpleader sum. The parties thereafter settled this issue among themselves.

---

[1] In its debt reorganization plan, Conco waived any right to the insurance proceeds from the policy up to $350,000.00.

A trial was held on the counterclaims of GECC and Sunrise seeking additional insurance proceeds, statutory penalties and attorneys' fees. The Sun adjuster testified that he did not consider the Valued Policy provision of section 22:695 applicable to this case. The bankruptcy court entered a judgment dismissing the claims, holding that the insurance policy did not allow the claimants to recover any amounts deducted for depreciation. Sunrise alone pursued an appeal of the depreciation issue because, based on the parties' settlement agreement, only Sunrise was entitled to recovery. The district court affirmed the bankruptcy court's decision, and Sunrise appealed.

## DISCUSSION

### A.  *STANDARD OF REVIEW*

We must review the district court's interpretation of the Sun insurance policy de novo. See Rutgers State Univ. v. Martin Woodland Gas Co., 974 F.2d 659, 661 (5th Cir. 1992). Similarly, we review the district court's interpretation of a state statute de novo. See Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co., 953 F.2d 985, 987 (5th Cir. 1992).

### B.  *INTERPRETATION OF SECTION 22:695.*

Sunrise argues that the district court mistakenly looked only at the language of the Sun policy rather than the language of the applicable Revised Statutes when holding the Valued Policy provisions inapplicable to the Sun policy. Sunrise asserts that section 22:695 applies to fire insurance policies which provide coverage against fire loss as well as coverage against other perils unless the policy complies with the explicit requirements of section 22:691(E), ¶ 2. Sunrise further contends that the district court erred for the following reasons: (1) Section 22:695 is not limited to fire losses, (2) the district court's interpretation of sections 22:691 and 22:691.2 renders meaningless the requirements

4

of section 22:691 regarding non-fire coverage, and (3) the interpretation conflicts with Louisiana and Fifth Circuit precedent. We disagree.

In a statutory interpretation case, our inquiry begins with the expressed language of the statute in question. "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." In re Greenway, 71 F.3d 1177, 1179 (5th 1996) (citing Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S. Ct. 3245, 3250, 73 L. Ed. 2d 973 (1982)). When a federal court ventures to interpret a state statute, interpretation must be done with the following caveat: the federal court must answer the question the way the state's highest court would resolve the issue. See Transcontinental Gas, 953 F.2d at 988. In addressing a related insurance issue, this Court in Graham v. Milky Way Barge, Inc., 824 F.2d 376, 381 (5th Cir. 1987) explained as follows:

> This Court is aware that the learned courts of the state of Louisiana have not been loathe to extend the application of this statute, and La. R.S. § 22:619, concerning warranties and misrepresentations in negotiation, beyond their apparent limits. However, to date the Supreme Court of the State of Louisiana has not extended the anti-technical statutes to apply to the instant situation and we hold that they would not.

> When the state courts have not yet decided a particular question, the duty of the federal court is to decide what the state courts would hold if faced with that issue. . . . In making this determination it is our duty . . . to view ourselves . . . as an inferior state court and to reach the decision that we think a state court would reach. . . . As a federal court, it is not for us to adopt innovative theories of state law, but simply to apply the law as it currently exists. . . . If the law of Louisiana is to be changed, it is up to the Supreme Court of Louisiana and not this court to change the substantive law of that state.

(citations, brackets, and quotations omitted). Accordingly, we are bound to interpret section 22:695 the way the Louisiana Supreme Court logically would interpret the statute based upon prior precedent, legislation, and relevant commentary.

5

The Louisiana legislature placed section 22:695 in the insurance code provisions dealing with fire insurance policies. The legislature intended to establish minimum standards to protect insureds when contracting for fire insurance. This purpose is evidenced by the language of section 22:695 and the surrounding fire statutes. The language of section 22:695 indicates that it applies only to fire insurance policies. The statute begins with the following phrase: "Under any fire insurance policy." La. Rev. Stat. § 22:695(B).[2] Further, the legislature's handling of additional coverages in section 22:691(E) further demonstrates that "other coverages" do not receive the benefits of the standard fire insurance provisions. Section 22:691(E) provides that other contracts may contain provisions and stipulations inconsistent with the standard fire insurance policy. We believe that the legislature expressly authorized insurers to depart from the standard policy with respect to other coverages because the other coverages were not the legislature's concern in adopting the standard fire insurance policy.

Sunrise claims that we are bound by our prior opinion in Real Asset Management, Inc. v. Lloyd's of London, 61 F.3d 1223 (5th Cir. 1995), which was decided the same month that the district court rendered its memorandum opinion.[3] In that case, the insured, who held a fire insurance policy

---

[2]Section 22:695(B) was repealed by Acts 1988, No. 951, Section 1. The provision as changed appears in section 22:695(A). Interestingly, this opening phrase survives the subsequent revision to this section.

[3]A majority of the other cases upon which Sunrise relies as proof of the applicability of section 22:695 involves fire losses. See Gibsland Supply Co. v. American Employers Ins. Co., 242 So. 2d 310 (La. App. 2d Cir. 1970); Nielson v. Lafayette Ins. Co., 300 So. 2d 217 (La. App. 2d Cir. 1974); Arnold v. Liberty Mutual Ins. Co., 469 So. 2d 1155 (La. App. 4th Cir. 1985); Sayes v. Safeco Ins. Co. Of America, 576 So. 2d 1071 (La. App. 3d Cir. 1991). Two cases cited by Sunrise do address section 22:695 in non-fire contexts; however, those cases do not give a clear statement that section 22:695 applies to other perils. In Trico Services Corp. v. Houston General Ins. Co., 414 So. 2d 1313 (La. App. 2d Cir. 1982), although the insured filed a claim for tornado damage under a policy providing coverage for fire and other perils, including windstorm damage, the issue was

6

that also provided coverage for other perils, sued to recover payment for the total loss of its building from a hurricane. The policy at issue was an "actual cash value" policy where the premium paid is based on the value assigned by the insurer. The district court held that the actual cash value of the building prior to the storm was $160,000. Based on evidence of the replacement cost minus depreciation, the court found that the damages exceeded $160,000. The court declared the building a total loss because the prior costs exceeded the building's value. The district court also awarded penalties and attorneys' fees because of the insurer's bad faith refusal to pay benefits. The defendants appealed, challenging the district court's finding that the building was a total loss. In explaining the correctness of the district court's construction of the actual cash value policy, this Court cited section 22:695(A) and noted that "[u]nder Louisiana Valued Policy Law, if the insurer bases the premium on its valuation of the property, then in the event of total loss, the insurer shall pay the actual cash value, or in other words, the policy amount." Sunrise argues that this reference in Real Asset constituted the holding in the case and that it governs the outcome of this appeal. We disagree.

The applicability of section 22:695 was not directly at issue in Real Asset, therefore, it does not prohibit us from reaching the conclusion that 22:695 does not apply to other perils where the insured does not also claim a fire loss. The correctness of our evaluation of the Real Asset case is validated by the fact that the panel did not address the holding in Graham v. Milky Way Barge, Inc., 824 F.2d 376 (5th Cir. 1987). In analyzing the scope of the fire statutes, we noted that the protective

whether the award based on inferior metal buildings was sufficient where the destroyed buildings were concrete. In Holloway v. Liberty Mutual Fire Ins. Co., 290 So. 2d 791 (La. App. 1st Cir. 1974), although the insured filed a claim for water damage to the bedroom carpet under the homeowner's insurance policy and section 22:695 is cited, the section is used to clarify the actual terms of the policy. The applicability of section 22:695 is neither raised by the parties nor discussed by the court. Thus, little guidance regarding the applicability of section 22:695 arises from either Trico or Holloway.

terms of the fire insurance provisions do not extend to other types of policies, see Graham, 824 F.2d at 381, or other perils causing damage without an accompanying fire loss. See id. at 382 ("this Court has not been able to find any Louisiana case law to the effect that La. R.S. § 22:692 should be applied to any other claim than fire losses covered by a policy for insurance covering losses due to fire"). Graham decided eight years earlier than Real Asset, specifically addressed the issue of the applicability of the fire statutes outside of the fire context. We will adhere to the decision previously reached by this Court in Graham until the Louisiana Supreme Court instructs us to do otherwise.[4]

In the instant case, the bankruptcy court held that pursuant to the language of the Sun policy, the counter claimants were entitled to the actual cash value of the property destroyed, and were not entitled to receive any amounts deducted for depreciation. After a careful review of the Sun policy, and the applicable law, the district court affirmed the bankruptcy court and concluded that La. R.S. 22:695 should not be read into the Sun policy coverage for theft and vandalism, which are triggered by the damages involved in this case. Specifically, the district court followed the teaching of Graham in holding that as to the partial loss damage to the warehouse, the Sun policy provides that the insured is entitled to actual cash value.

Finding no error in the district court's analysis of the law and facts of the case. We affirm.

### CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[4]Our holding regarding the inapplicability of section 22:695 to other perils obviates the need to address Sunrise's other arguments regarding the district court's refusal to award penalties and attorneys' fees.

8